592 A.2d 683

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Quinterio SMART, Appellee.**

Supreme Court of Pennsylvania.

Submitted May 6, 1991.

Decided July 15, 1991.

H. Stanley Rebert, Dist. Atty., for appellant.

Thomas L. Kearney, Asst. Public Defender, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## ORDER

PER CURIAM.

This appeal is dismissed as having been improvidently granted.

LARSEN, J., files a dissenting opinion in which McDERMOTT, J., joins.

LARSEN, Justice, dissenting.

I dissent. The issue raised by this appeal is whether the Superior Court exceeded its scope of appellate review by substituting its discretion for the discretion properly exercised by the trial court in imposing a lawful sentence. The majority, by finding that the petition for allowance of appeal in this case was improvidently granted, is once again erring in finding that this Court does not have even the power of limited (or narrow) certiorari to review decisions

of the Superior Court which involve challenges to the discretionary aspects of sentencing under 42 Pa.C.S.A. § 9781(f).[1]

According to the testimony of appellee, Quinterio Smart, on January 30, 1988, he agreed to join two men he had just met in a bar in the robbery of a woman with whom appellee had previously worked. Appellee provided the two men with the woman's address and led them to her apartment which was located in a shelter for battered women. The three men broke into the apartment from the fire escape, and appellee decided to withdraw from the enterprise only when he discovered that one of the men had a gun and planned to shoot someone. Before leaving the scene, however, appellee spotted the intended victim returning to her apartment, and admitted that he warned his cohorts of her arrival. Appellee then deliberately left the unsuspecting woman to the two armed men who had explicitly sought her out for the purpose of robbing her. The woman and her 16 year old, pregnant roommate were subsequently robbed and raped during the incident.[2]

Appellee was charged with burglary, robbery, two counts of rape and involuntary deviate sexual intercourse. He was tried before a jury in the Court of Common Pleas of York County and was convicted of burglary. He was acquitted of the other charges. At appellee's sentencing hearing, the sentencing judge specifically stated that, in imposing sentence, he would not consider the offenses of which appellee had been acquitted or the derogatory comments made about appellee by police officers in the presentencing report.

1. Section 9781(f) provides:
   **(f) Limitation on additional review.**—No appeal of the discretionary aspects of the sentence shall be permitted beyond the appellate court that has initial jurisdiction for such appeals.
   Act 1978, Nov. 26, P.L. 1316, No. 319, § 3, effective Jan. 1, 1979.

2. According to the two victims in the case, they were sexually assaulted in the darkened apartment by one man with a mask over his face. Their assailant knew their names and had the voice and body build of the appellee who was known to both of them. Evidently, the jury did not find that their testimony on identification proved beyond a reasonable doubt that appellee was the perpetrator of the crimes against the two women.

Appellee was sentenced to a term of imprisonment of eight to twenty years.[3] The sentencing judge explained his reasons for imposing a lengthy prison sentence, as follows:

> We note that he was originally charged with juvenile offenses [sic] turning in fire alarms. That is not to be considered as an aggravating circumstance certainly, but during that juvenile placement he was discharged from the Paradise School for Dependent Children because of assaultive behavior after a year and sent to the Loysville Youth Camp.
>
> He was discharged in January of 1983, and several months later was again charged with a juvenile offense, this time robbery because he knocked off a—knocked a five-year-old boy off of a bike and stole it.
>
> This would have been at the time when he was, I believe his attorney said 15 years old. I'd calculate it to be slightly younger than that. It's this type of conduct that he was sentenced to Vision Quest for a year and a half and then participated in the teenage wagon train program and was later discharged from the Vision Quest Program, the residential unit in Erie, but it's important to consider that the assaultive behavior as a youth, the fact that he would take advantage of a five-year-old boy, and the fact that he would be a willing participant in a burglary for purposes of stealing money from a young lady indicates that the Defendant has a propensity towards violence and is, in fact, a danger to society.
>
> With his juvenile record, it is clear that he is a poor candidate at best for rehabilitation.
>
> The probation department in this case has recommended a sentence of two and a half to five years. In

---

**3.** Although this sentence was well *within* the statutory maximum of twenty years for a felony of the first degree, 18 Pa.C.S.A. § 1103, this sentence was well beyond the aggravated range for the offense in the Sentencing Guidelines of 1982, 204 Pa.Code § 303.1 et seq. (replaced 1988), which were, at the time of sentencing, invalid and of "no force at all." *Commonwealth v. Sessoms,* 516 Pa. 365, 380, 532 A.2d 775, 782 (1988).

this particular situation, that is the penalty that is prescribed by the sentencing guidelines.

In this case, his conduct in taking these other two men, according to his testimony, to a refuge for abused women, further fortifies the Court's opinion that he is, in fact, a person who is capable of engaging in anti-social and violent conduct by invading that refuge—by taking someone to the refuge in the middle of the night to commit a crime of robbery.

Now, in this case, the Court considers that the offenses on this evening resulted in serious damage to the victim, although the Defendant was not found guilty of those offenses, and we are not considering that fact as a part in the sentencing in this case, but he did, in fact, take individuals to that place by his own testimony, and whatever occurred, did occur, and while the Defendant is not— has not been convicted of those offenses, his taking others to the residence, we find seriously contributed toward any of the harm that occurred on the evening in question.

His conduct clearly facilitated that event. We have reviewed the sentence in the light of the sentencing guidelines and have considered his prior record score which is minimal in this case, and for that reason we do not feel that the sentencing guidelines under the case should be followed, and we do not feel that it would be appropriate to apply the sentencing guidelines, nor the probation office recommendations in that connection in this case.

We fix a sentence in this time which we feel will afford society protection and will afford people in this community greater safety.

The maximum sentence that—the maximum aggravated sentence under the guidelines is two and a half years. However, the Court feels that that sentence or any lesser sentence would seriously depreciate [sic] the seriousness

of this offense in the conduct of the Defendant in this case.

Sentencing Hearing Transcript at 6–7 (Sept. 12, 1988).

Appellee filed an appeal to the Superior Court, claiming that the sentencing court had abused its discretion by imposing an excessive sentence. A divided panel of Superior Court vacated appellee's sentence and remanded for resentencing. We granted the Commonwealth's petition for allowance of appeal, and I believe we should reverse the decision of the Superior Court and reinstate the judgment of sentence.

In *Commonwealth v. Parrish*, 515 Pa. 297, 303–305, 528 A.2d 151, 154–55 (1987) (Larsen, J., dissenting), I stated:

A trial judge has the right and obligation to be "harsh" when he has duly considered all relevant circumstances and believes that under the facts such a sentence is warranted. Where the sentence is within the legislative guidelines, appellate courts may not vacate sentences as being manifestly excessive merely because the trial judge imposed a tough sentence where the appellate judges would have given a lenient one.

Therefore, it is equally clear that Superior Court exceeded its scope of appellate review in finding that the sentencing court abused its discretion and imposed a manifestly excessive sentence. Despite the mandatory language of 42 Pa.C.S.A. § 9781(f), it cannot be read to eliminate this Court's inherent authority to review, on a limited basis, a ruling by an intermediate appellate court which is an abuse of discretion or exceeds its authority.

We have held, in another context, that where an appeal is prohibited by statute, limited review is available in this Court to review (1) the question of jurisdiction; (2) the regularity of the proceedings below; (3) *questions of excess in exercise of powers;* and (4) constitutional questions. *See Guthrie v. Borough of Wilkinsburg*, 508 Pa. 590, 499 A.2d 570 (1985); *City of Washington v. Police*

*Department of Washington,* 436 Pa. 168, 259 A.2d 437 (1969).

\* \* \* \* \* \*

Although broad and narrow certiorari have been eliminated from our lexicon by 42 Pa.C.S.A. § 5105(d)(1), our decision in *Guthrie v. Borough of Wilkinsburg, supra,* gives continuing vitality to the concept of limited review where a statute purports to eliminate any judicial or subsequent review.

\* \* \* \* \* \*

Review of Section 9781(f) cases is not beyond our jurisdiction where, as here, the trial court imposes a sentence within the statutory guidelines after full consideration of all relevant circumstances under the Sentencing Code and all criteria established by case law to guide sentencing decisions. Superior Court, in substituting its notion of the appropriate sentence for that of the trial judge, improperly "tinkered" with the lawfully imposed sentence. We are not without the inherent authority to correct Superior Court's manifest error, notwithstanding the apparent limitations of Section 9781(f).

(emphasis in original) (footnotes omitted)

In the instant case, Superior Court felt constrained by sentencing guidelines which were, at the time of sentencing, *no longer in effect.* Given the invalidation of the sentencing guidelines, the sentencing court had broad discretion to sentence within the scope and according to the purpose of the Sentencing Code. 42 Pa.C.S.A. §§ 9701–9781. The sentence imposed upon appellee was *lawful.* It was based on the background of the appellee, the circumstances surrounding the criminal offense of which he was convicted, and the need to insure adequate protection to the public; therefore, it conformed with the purpose of the Sentencing Code without exceeding its intended scope.

Superior Court explained that it vacated appellee's sentence in order to avoid the "appearance that [appellee] is being sentenced, in reality, for crimes the jury rendered an

acquittal verdict" and to eliminate what it termed "an appearance of a make-up type of sentence." 387 Pa.Super. 518, 524, 564 A.2d 512, 514–15 (1989).

Superior Court exceeded its scope of appellate review by substituting its view that the appellee should receive a sentence much more lenient than the lawful one imposed by the trial court. This was clearly an abusive usurpation of the sentencing power of the sentencing judge and should not be allowed.

Accordingly, I would reverse the order of the Superior Court and reinstate the judgment of sentence.

McDERMOTT, J., joins in this dissenting opinion.