## TOWNSHIP OF WILKINS

v.

## WAGE AND POLICY COMMITTEE OF THE WILKINS TOWNSHIP POLICE DEPARTMENT, representing the Police Bargaining Unit of the Wilkins Township Police Department, Appellant.

Commonwealth Court of Pennsylvania.

Argued March 10, 1997.

Decided July 2, 1997.

---

James L. McAneny, Harrisburg, for appellant.

Douglas I. Happel, Pittsburgh, for appellee.

Before DOYLE and McGINLEY, JJ., and RODGERS, Senior Judge.

DOYLE, Judge.

The Wage and Policy Committee of the Wilkins Township Police Department (Committee), as representative for the bargaining unit of police officers of Wilkins Township, appeals from a decision of the Court of Common Pleas of Allegheny County which vacated and modified an Act 111 arbitrators' award amending provisions of the collective bargaining agreement (CBA) between the Committee and the Township of Wilkins (Township) for the three-year period January 1, 1996, through December 31, 1998.

The Committee and the Township had a collective bargaining agreement for the years 1993, 1994, and 1995 (Old CBA), and the relevant provisions of that agreement provided as follows:

## ARTICLE XV

### HEALTH INSURANCE BENEFITS

A. *Health Care Benefits.* All the health care insurance policies maintained by the Township, at Township expense, for the benefit of the officers and their families, shall continue in effect during the terms of this contract.... In addition, officers shall be eligible for 65 Special coverage at the expense of the Township and at the time they become eligible for Medicare provided they do not have the same or equivalent coverage.

. . . .

D. For employees who retire after December 31, 1989,[1] the Township will, for

---

1. By using this date, these provisions applied to police officers who retired *prior to* the three

the employees only, provide for the continuation of basic health care coverage (hospital/surgical/major medical) and prescription drug coverage under the Township's group health care policies for those benefits at the Township's expense. This benefit shall be available to the employee for the limited period between the employee's retirement and the employee's 65th birthday....[2]

(Committee's Brief at 7–8.)

Basically, therefore, under the Old CBA, police officers and their families would be provided health care coverage until the officer retired. After retirement, although the officer himself would continue to be covered, such coverage would not be extended to his spouse or family. Furthermore, this coverage for the retiree would be provided only until the officer reached age 65, when he would be entitled to Medicare, and the Township would then only provide 65 Special coverage for him alone.

In the course of bargaining for an agreement to begin on January 1, 1996, the Committee proposed, *inter alia*, Blue/Cross Blue Shield health coverage for retirees and their families, and "Retroactive" "65 Special" coverage for all past retirees. The Township, on the other hand, proposed changing Blue Cross/Blue Shield coverage to a less expensive "Select Blue" plan, or to implement employee contributions toward the health care insurance premiums.

On July 25, 1995, the Committee declared an impasse and notified the Township of its intention to proceed to binding arbitration pursuant to the Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1–.10 (Act 111). Accordingly, the matter was submitted to arbitration, and, on December 20, 1995, an arbitration panel issued an award for the three-year period of January 1, 1996 through December 31, 1998 (New CBA). In resolving the disputed issues, the arbitration panel

awarded the change from traditional Blue Cross/Blue Shield coverage to the less expensive Select Blue plan and deleted the free-standing prescription coverage.

The arbitration panel amended the introductory sentence to Subsection A of the CBA to provide as follows:

Pursuant to the arbitration award issued under AAA Case No. 55–360–0188–95, Wilkins Township shall, during the term of this Agreement, unless modified by a writing between the parties, maintain at Township expense, for the benefit of the officers and their families, the basic health care program offered by Blue Cross/Blue Shield of Western Pennsylvania and known as Select Blue....

(Arbitration Award at 3; Reproduced Record (R.R.) at 16a.) The arbitrators also amended the second sentence of Subsection A to read as follows:

In addition, officers **and their spouses** shall be eligible for Sixty–Five Special Coverage, without regard to the date of the retirement of the officer, at the expense of the Township, and at the time they become eligible for Medicare, provided they do not have the same or equivalent coverage from another source. **In the event that extending this coverage to existing retirees is determined to be unenforceable, then as an alternative to this provision, medical coverage shall be provided for any officer and spouse where that officer retires subsequent to 12/31/95.**

(Arbitration Award at 3; R.R. at 16a.) (Emphasis added.)

Additionally, the arbitration panel amended Subsection D of the agreement to read:

For employees who retire after 12/31/89, the Township will, for employees only, provide for the continuation of basic health care coverage (hospital/surgical/major

---

years of coverage under the Old CBA; that is, this section was meant to apply to police officers who retired during 1990, 1991, and 1992, as well as during 1993, 1994, and 1995. We would assume, therefore, that an identical provision had been in the preceding CBA for the years 1990 through 1992.

2. Subsection D also provided that if the employee could obtain these benefits from another source at no cost to him, *e.g.*, if a subsequent employer provided such coverage, then the former employee would be obligated to utilize that source and to inform the Township that it would not need to provide such coverage.

medical)[3] under the Township's group health care policies for those benefits at the Township's expense. This benefit shall be [available] to the employee for the limited period between the employee's retirement, and the employee's sixty-fifth birthday. . . .

(Arbitration Award at 3–4; R.R. 16a–17a.)

On January 22, 1996, the Township filed a Petition to Vacate and/or Modify or Correct an Arbitration Award in the Court of Common Pleas. By order dated April 4, 1996, the court granted the Township's petition.

Specifically, the order of the Common Pleas Court "vacated in full" the arbitrators' amendments to Subsection A of the CBA, and "reinstated" Subsection A to provide as follows:

In addition, officers shall be eligible for 65 Special Coverage at the expense of the Township and at the time that they become eligible for Medicare, provided they do not have the same or equivalent source.

(Order of the Court of Common Pleas, 4/4/96, at 1–2.) Additionally, the April 4th order of the Court of Common Pleas provided:

The provision of the CBA set forth at Article XV, Subsection D, which relates to a date of 'December 31, 1989' shall continue in full force and effect, except that the date 'December 31, 1995' shall be substituted for 'December 31, 1989.'

(Order of the Court of Common Pleas, 4/4/96, at 2.) The Common Pleas Court subsequently authored an opinion dated November 26, 1996.

■ After a careful review of the record and the relevant provisions of the New CBA in this case, we hold that the trial court exceeded the narrow certiorari scope of review by revising Subsection A of the New CBA and thereby failing to give effect to the alternative provision included in that section as determined by the arbitration panel. Furthermore, by changing the date stated in Subsection D of the New CBA, the trial court brought two provisions of the agreement into direct conflict with one another. Accordingly, we reverse the decision of the court below.

■ As this Court stated in *Fraternal Order of Police Lodge No. 5 v. City of Philadelphia*, 118 Pa.Cmwlth. 132, 546 A.2d 137 (1988), *aff'd*, 523 Pa. 490, 567 A.2d 1388 (1990),

[C]ourts have jurisdiction to review Act 111 arbitration awards in the nature of narrow certiorari. Such review is limited to questions concerning (1) the jurisdiction of the arbitrator; (2) the regularity of the proceedings; (3) an excess in the exercise of the arbitrator's powers; and (4) constitutional questions.

*Id.* 546 A.2d at 140; *see also Pennsylvania State Police v. Pennsylvania State Troopers' Association (Betancourt)*, 540 Pa. 66, 656 A.2d 83 (1995). The "narrow certiorari" scope of review applies equally to courts of common pleas reviewing an Act 111 arbitration award. *See International Association of Firefighters, Local 1803 v. City of Reading*, 138 Pa.Cmwlth. 244, 587 A.2d 873 (1991).

The trial court reasoned that Subsection A of the collective bargaining agreement was invalid in its entirety because it attempted to provide medical coverage for past retirees, *i.e.*, employees who had already retired prior to January 1, 1996, the effective date of the New CBA, where no such coverage had been provided before. In this respect, the trial court was correct in its determination that providing new benefits to former retirees is unlawful, and, on appeal to this Court, both parties agree on this point.

■ A municipality may not enter an agreement over the rights of existing retirees because such individuals are no longer employees or members of the bargaining unit.[4]

---

3. Prescription drug coverage was excised.

4. In *Lower Merion Fraternal Order of Police Lodge No. Twenty–Eight v. Township of Lower Merion*, 511 Pa. 186, 512 A.2d 612 (1986) (per curiam) (Zappala, J., opinion in support of affirming in part and reversing in part), a splintered opinion, our Supreme Court stated:

As a prerequisite for the township paying a premium for health and life insurance, a person must be an employee of the township. Once a person retires, he is no longer an employee of that business entity. Therefore, a township may not pay a premium for a nonem-

However, the New CBA in this case provided for a lawful alternative in the event that some of the provisions were deemed to be invalid: "In the event that extending this coverage to existing retirees is determined to be unenforceable, then as an alternative to this provision, medical coverage shall be provided for any officer and spouse where that officer retires subsequent to 12/31/95." Clearly, this alternate provision is valid because it affects only those present employees who will retire after the effective date of the New CBA, which is permissible under Act 111. 43 P.S. § 217.1. Furthermore, this Court has previously upheld the use of similar alternate provisions. *See Commonwealth v. State Conference of State Police Lodges of the Fraternal Order of Police*, 117 Pa. Cmwlth. 564, 546 A.2d 697 (1988), *rev'd on other grounds*, 525 Pa. 40, 575 A.2d 94 (1990).

Consequently, we see no reason why, given its narrow scope of review under these circumstances, the trial court should not have upheld the arbitrators' award to the extent that the alternative provision stated in Subsection A was lawful. The trial court, therefore, was incorrect in invalidating the amended version of Subsection A of the New CBA in its entirety.

After giving the alternate provisions its proper effect, it is obvious that the New CBA provides Select Blue health insurance coverage to officers retiring on or after 1/1/96 **and their spouses** until they reach age 65 and for 65 Special coverage thereafter.[5]

■ With respect to Subsection D, on the other hand, its *sole* purpose in the Old CBA was to effect the rights of employees who retired after December 31, 1989, which, of course, would technically include not only employees retiring after January 1, 1993, the effective date of the Old CBA, but also employees retiring after January 1, 1996, the effective date of the New CBA. However, when the trial court amended Subsection D by changing the date "12/31/89" to "12/31/95," it caused Subsection D to be in direct conflict with Subsection A, once the alternative provision in Subsection A is given its proper effect. The conflict derives from the fact that the alternate provision of Subsection A in the New CBA provides for medical coverage for officers **as well as their spouses after retirement**, while Subsection D, which was apparently transposed from the Old CBA, unequivocally states that such medical coverage shall be provided "for employees only."

Furthermore, it is imperative to acknowledge that the New CBA will not, and cannot, affect the present rights of police officers who retired between 1/1/90 and 12/31/95. Those benefits have been fixed by the Old CBA (covering the years 1993, 1994, and 1995) and the CBA prior to the Old CBA (covering the years 1990, 1991, and 1992). Subsection D of the Old CBA provided:

> [T]he Township will, for employees only, provide ... prescription drug coverage under the Township's group health care policies for those benefits at the Township's expense.

(Committee's Brief at 8.) The words "and prescription drug coverage" were apparently

---

ployee. Accordingly, if a township were to do so, it would be performing an illegal act.
*Id.* at 192, 512 A.2d at 615. The principle that retired employees are not members of the bargaining unit is clear under federal labor law. *See Allied Chemical & Alkali Workers Local Union No. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 181 n. 20, 92 S.Ct. 383, 398 n. 20, 30 L.Ed.2d 341 (1971) ("Since retirees are not members of the bargaining unit, the bargaining agent is under no statutory duty to represent them in negotiations with the employer."); *Anderson v. Alpha Portland Industries Inc.*, 727 F.2d 177, 181 (8th Cir.1984) ("The union owes no duty of fair representation to retirees since the union's duty runs only to employees within the bargaining unit for whom the union acts as exclusive bargaining representative."). Under the law of this Commonwealth, however, this

principle is not as firmly established. *See Lower Merion*, 511 Pa. at 194–200, 512 A.2d at 616–19 (Larsen, J., opinion in support of reversal). In any event, the Committee, in its brief, has conceded the invalidity of this provision of the CBA: "[the Committee] do[es] not argue with the lower court's vacation of the increase in medical insurance coverage for previously retired officers and *their spouses.*" (Committee's Brief at 12.)

5. It is also provided, under this construction of the new CBA, that if a retired police officer reaches age 65 before his or her spouse, the spouse will continue to receive Select Blue coverage until he or she reaches age 65, and the officer's spouse will thereafter receive 65 Special coverage.

deleted from Subsection D by the arbitration panel, and thus they do not appear in that subsection of the New CBA. However, as noted above, Subsection D of the New CBA may not lawfully be construed to abrogate the medical coverage of past retirees in this regard.

Consequently, the only equitable way to resolve these inherent conflicts, and give effect to the implicit intent of the arbitrators to keep intact the medical coverage for officers who retired before 12/31/95 but expand medical coverage to spouses of employees retiring after 1/1/96, is to vacate the change made by the trial court and modify Subsection "D" to read:

For employees who retire after 12/31/89 **but before 1/1/96,** the Township will, for employees only, provide for the continuation of basic health care coverage (hospital/ surgical/major medical) **and prescription drug coverage** under the Township's group health care policies for those benefits at the Township's expense. **For employees who retire after 12/31/95, the Township will, for employees and their spouses, provide for the continuation of basic health care coverage (hospital/surgical/major medical) under the Township's group health care policies for those benefits at the Township's expense.** This benefit shall be available to the **beneficiary** for the limited period between the employee's retirement and the **beneficiary's** 65th birthday. Additionally, if the **beneficiary,** at no cost to the **beneficiary,** can obtain these benefits from another source, then the **beneficiary** is obligated to utilize that source and inform the Township that it does not need to provide this insurance coverage to him/**her.** If the **beneficiary** at some point between the time frame of the **employee's** retirement and age sixty-five has and then loses this alternative coverage, then the Township, upon receiving notice of such

from the **beneficiary,** will restore the **beneficiary's** coverage under the Township health insurance policy.

■ The Township argues that we should affirm the decision of the court below because the arbitration panel "lacked jurisdiction to award [health] coverage" because the issue of "unspecified 'full medical coverage' for future retirees and their spouses was not an issue submitted for arbitration by either party to this action." (Township's Brief at 14.) In essence, the Township is arguing a waiver of the issue. However, the record clearly indicates that the issue of retirees' health benefits *was* before the arbitrator and submitted to the arbitration panel as one of the issues over which the two parties bargained to impasse, and the Township concedes as much in its brief.[6] Once an issue is submitted to arbitration, the arbitrators may resolve the issue as they reasonably see fit. As we stated in *Board of Supervisors of Butler Township v. Butler Township Police Department,* 153 Pa.Cmwlth. 306, 621 A.2d 1061 (1993),

Act 111 does not limit the authority of arbitrators to only '[accept]' or 'reject' the proposed resolution of specific issues.... Once an *issue* is properly placed in dispute, arbitrators are free to resolve that issue in a fair manner within the total context of the award.

*Id.* 621 A.2d at 1064 (citation omitted) (emphasis in original).

Accordingly, for the foregoing reasons, we vacate the order of the court below, reinstate the award of the arbitrators in accord with this opinion, and modify the New CBA as provided herein.

### ORDER

NOW, July 2, 1997, the order of the Court of Common Pleas of Allegheny County in the

---

**6.** In its brief, the Township states:
   The health benefit issues submitted by [the Committee] or arbitration in this action were:
   **Blue Cross/Blue Shield for retiree[s'] family Retroactive '65 Special' to all past retirees**
   COLA for retirees
   (Township's Brief at 12.) (Emphasis added.) Similarly, Paragraph 9 of the Committee's Answer to Petition to Vacate and/or Modify or Correct an Arbitration Award states:

... The full specification of the issue in dispute regarding post-retirement medical benefits stated:
   Blue Cross/Blue Shield for retiree['s] family Retroactive '65 Special' to all past retirees
   (Answer to Petition to Vacate and/or Modify or Correct an Arbitration Award ¶ 9; R.R. at 24a.)

above-captioned matter is hereby vacated, and the award of the arbitrators is reinstated in accord with the foregoing opinion. It is further ordered that the relevant provisions of the collective bargaining agreement between the parties for the years 1996, 1997, and 1998 shall read as follows:

ARTICLE XV

HEALTH INSURANCE BENEFITS

A. *Health Care Benefits.* Pursuant to the arbitration award issued under AAA Case No. 55–360–0188–95, Wilkins Township shall, during the term of this Agreement, unless modified by a writing between the parties, maintain at Township expense, for the benefit of the officers and their families, the basic health care program offered by Blue Cross/Blue Shield of Western Pennsylvania and known as Select Blue. In addition, officers and their spouses shall be eligible for Sixty–Five Special Coverage, without regard to the date of the retirement of the officer, at the expense of the Township, and at the time they become eligible for Medicare, provided they do not have the same or equivalent coverage from another source. In the event that extending this coverage to existing retirees is determined to be unenforceable, then as an alternative to this provision, medical coverage shall be provided for any officer and spouse where that officer retires subsequent to 12/31/95.

. . . .

D. For employees who retire after 12/31/89 but before 1/1/96, the Township will, for employees only, provide for the continuation of basic health care coverage (hospital/ surgical/major medical) and prescription drug coverage under the Township's group health care policies for those benefits at the Township's expense. For employees who retire after 12/31/95, the Township will, for employees and their spouses, provide for the continuation of basic health care coverage (hospital/surgical/major medical) under the Township's group health care policies for those benefits at the Township's expense. This benefit shall be available to the beneficiary for the limited period between the employee's retirement and the beneficiary's 65th birthday. Additionally, if the beneficiary, at no cost to the beneficiary, can obtain these benefits from another source, then the beneficiary is obligated to utilize that source and inform the Township that it does not need to provide this insurance coverage to him/her. If the beneficiary at some point between the time frame of the employee's retirement and age sixty-five has and then loses this alternative coverage, then the Township, upon receiving notice of such from the employee, will restore the beneficiary's coverage under the Township health insurance policy.